Jesus Garcia DELGADO,
Petitioner–Appellee,

v.

Gail LEWIS, Deputy Warden; Attorney General of the State of California, Respondents–Appellants.

No. 97–56162.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 5, 1998. [1]

Decided Feb. 23, 1999.

1. The panel finds this case appropriate for submission without oral argument pursuant to Federal Rule of Appellate Procedure 34(a).

Sabrina Y. Lane, Deputy Attorney General, San Diego, California, for respondents-appellants.

Michael B. Dashjian, Solvang, California, for petitioner-appellee.

Before: PREGERSON, DOROTHY W. NELSON, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

Jesus Garcia Delgado claims his appellate counsel ineffectively assisted him by failing to raise any arguable issues in his appellate brief. The district court agreed and granted his petition for a writ of habeas corpus. We affirm.

I

Delgado is a forty-five-year old man of Hispanic descent who speaks and understands very little English. In 1994, he was arrested along with five codefendants and

charged with manufacturing methamphetamine, possession of ephedrine with intent to manufacture methamphetamine, and possession of methamphetamine for sale. The felony complaint also sought sentence enhancements.

Delgado initially rejected a plea agreement and entered a plea of not guilty, but subsequently pled guilty to the three counts and the two sentence enhancements. As part of a global joint plea agreement, the state sentencing judge agreed not to sentence any of the defendants to more than fifteen years and agreed to consider mitigating factors at the sentencing hearing.

Delgado's appointed trial counsel did not attend the preliminary hearing, the sentencing hearing, or Delgado's signing of the change-of-plea agreement. In fact, an attorney for a codefendant explained the change-of-plea agreement and form to Delgado. Delgado's trial counsel did accompany his client to the change-of-plea hearing, but had to admit to the district court that he had not explained the change-of-plea form to Delgado and instead that he had relied on a codefendant's attorney to do so. The court asked the other attorney, who was present representing his own client, if he had explained the change-of-plea form to Delgado. The codefendant's attorney stated that the interpreter told him that Delgado had some questions, but that he had answered them and Delgado "appeared" to understand the explanation.

When the court asked Delgado how he pled to the first charge, he replied, "I have always said I was innocent. Oh, okay, guilty." He answered guilty to the other two charges and admitted the sentence enhancements.

Delgado's appointed counsel also failed to appear at the sentencing hearing. In his absence, an attorney for yet another codefendant indicated she would temporarily represent Delgado, whom she said had agreed to the arrangement. The sentencing hearing commenced, with the attorneys for all of the other defendants making arguments on behalf of their clients. Delgado's "substitute" counsel separately represented another codefendant at the hearing and, after extensive argument, obtained a favorable agreement resulting in probation for her client. When the court turned to Delgado's sentence, however, the substitute counsel simply said, "I'm just going to submit it on basically the Court's judgment as to exactly how much time Mr. Delgado should get." Delgado was never asked if he wished to make a statement on his own behalf, and the record is unclear about whether Delgado had the assistance of an interpreter. Finally, the judge noted that he had reviewed the probation office's report but had not "received any other documentation in connection with this case." He then sentenced Delgado to fifteen years—the maximum under the plea agreement—notwithstanding the fact that Delgado had no known criminal record.

Although making only a cameo appearance on behalf of his client before the imposition of sentence, Delgado's appointed counsel did manage to file a request for a certificate of probable cause, which stated that Delgado wanted to appeal his plea because: (1) "the translation to Spanish as well as the advice by the attorney regarding plea negotiations and actual entry of plea were inadequate," and (2) he had wanted to "withdraw his plea prior to sentencing but confusion in translation and attorney communication prevented this from being raised."

New counsel was appointed to argue the appeal for Delgado. In discharge of his duties, appellate counsel filed a brief that did not raise any issues or ask for reversal on any ground, not even those grounds identified by trial counsel in his request for a certificate of probable cause. Instead, the brief merely recited the allegations of the charging documents and invited the California Court of Appeals to conduct an independent review of the record.

Although his appointed appellate counsel had not withdrawn, Delgado filed his own supplemental brief alleging ineffective assistance of trial counsel under both the state and federal constitutions. He alleged that his trial counsel had been ineffective in advising him to enter a guilty plea, that his counsel had not consulted with him because of the difficulty in communicating through an interpreter, and that he had entered a guilty plea

due to a mistaken belief that his sentence would be time served. Finally, he argued that his appointed counsel was absent from the sentencing hearing and that no attorney had argued on his behalf regarding mitigation.

The Court of Appeals for the Fourth District of California affirmed the conviction without opinion, stating only that it had conducted an independent review of the record and found no arguable issues. Delgado then filed a *pro. per.* petition in the Supreme Court of California, which was denied without opinion. Next, Delgado filed a petition for a state writ of habeas corpus in the Supreme Court of California, alleging ineffective assistance of trial and appellate counsel under both the state and federal constitutions on the same grounds he had raised in his *pro. per.* direct appeal. Delgado also asserted that his appellate counsel had been ineffective because he had failed to raise trial counsel's ineffectiveness in the appellate brief and failed to send him copies of the trial transcripts as required by California law. Finally, Delgado alleged that he misunderstood, due to his inability to speak or understand English, that his plea would subject him to a fifteen-year sentence. The Supreme Court of California denied his state habeas petition in a one sentence order.

On October 15, 1996, Delgado filed a petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, alleging ineffective assistance of appellate counsel. The district court granted Delgado's petition, stating that unless the California Court of Appeals reinstated Delgado's direct appeal and provided him with new counsel within sixty days, he would be released from prison. Deputy Warden Lewis filed a timely notice of appeal with this court, but did not seek a stay of the district court's Order. Accordingly, the California Court of Appeals vacated its prior opinion, reinstated Delgado's direct appeal, appointed new counsel pursuant to the Order, but stayed the state proceedings pending the outcome of this appeal.

## II

■ Delgado properly exhausted the remedies available to him in state court, as re-

quired by 28 U.S.C. § 2254(b)(1), by filing a state writ of habeas corpus in the Supreme Court of California alleging ineffective assistance of trial and appellate counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). His allegations in the state court petition of ineffective assistance in violation of both the California and United States Constitutions were sufficient to "fairly present" the claim to the state court. *See Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). Although Delgado's petition did not specifically argue that the brief filed by his appellate counsel violated *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), his petition was sufficient to alert the State to both state and federal precedent governing his claim of ineffective assistance of counsel, including *Anders.*

## III

■ Because Delgado filed his federal habeas petition after April 1, 1996, the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") applies to his petition. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Jeffries v. Wood,* 114 F.3d 1484, 1499 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). Under AEDPA, a federal court may grant habeas relief if a state court adjudication:

(1) *resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or*

(2) *resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.*

28 U.S.C.A. § 2254(d) (West Supp.1998).

Consistent with the approach taken by other circuits, the district court concluded that because the state court had not articulated the reasoning for its decision when it denied Delgado's habeas petition, *de novo* review was necessary. *See Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998) (stating that

part of reasonableness review under AEDPA "requires federal courts to take into account the care with which the state court considered the subject"); *Cardwell v. Greene,* 152 F.3d 331, 339 (4th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 587, 142 L.Ed.2d 491 (1998) (holding that it could not review a state court's application of "clearly established law" when the court does not give a rationale for its adverse determination; in such a case the federal court must "independently ascertain whether the record reveals a violation"); *Porter v. Gramley,* 112 F.3d 1308, 1313 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 886, 139 L.Ed.2d 873 (1998) (holding that AEDPA mandates respect for state court judgments if they contain a "responsible, thoughtful answer reached after a full opportunity to litigate") (citations omitted). We agree.

 A more deferential standard of review of a state court's application of "clearly established law" may be warranted when the state court has provided a "thoughtfully reasoned decision." *Lindh v. Murphy,* 96 F.3d 856, 871 (7th Cir.1996), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). And, as recently noted by a panel of our court, AEDPA's standard of review provisions "reflect the ... general requirement that federal courts not disturb state court determinations unless the state court has failed to follow the law as explicated by the Supreme Court." *Davis v. Kramer,* 167 F.3d 494, 500 (9th Cir.1999). The *Davis* court went on to explore and define the meaning of "clearly established law" and "unreasonable applications of law" in a careful analysis that comports with other federal courts of appeals decisions. *See id.* at 500. That issue, however, is not before us because when a state court does not articulate the rationale for its determination, a review of that court's "application of clearly established Federal law" is not possible. *See Cardwell,* 152 F.3d at 339. Thus, when confronted with a state court decision totally devoid of reasoning, a federal district court independently must determine whether the record reveals a constitutional violation. *See id.* Under

those circumstances, *de novo* review is appropriate.[2]

This approach is in consonance with the deference we have accorded state court findings of fact on habeas review. Although AEDPA requires federal courts to defer to reasonable state court factual findings, we have, in a number of cases in which the state court did not make findings of fact, granted less deference to the state court decision. *See Jones v. Wood,* 114 F.3d 1002, 1013 (9th Cir.1997) (holding that when a state court has made no findings of fact, "the district court's duty to ascertain the sufficiency of the evidence by engaging in a thorough review of the complete state court record is unaffected by the AEDPA"); *Jeffries,* 114 F.3d at 1500 (stating that when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment") (citations and internal quotation marks omitted); *Baylor v. Estelle,* 94 F.3d 1321, 1325 (9th Cir.1996) (stating that the district court's evidentiary hearing was the first chance that the petitioner had to develop the factual basis of his claim and therefore finding that it would be inappropriate to disregard the facts developed in the district court even in the light of AEDPA), *cert. denied,* 520 U.S. 1151, 117 S.Ct. 1329, 137 L.Ed.2d 489 (1997).

In this case, the California Court of Appeals affirmed Delgado's conviction without opinion. The court made no factual findings nor drew any conclusions of law. The Supreme Court of California summarily denied review. Six months later, the Supreme Court of California denied Delgado's petition for habeas relief, again without explanation. Such a perfunctory review, often euphemistically described as a "postcard denial," does not warrant the deference we might usually apply. Absent a reasoned explanation, federal courts are left simply to speculate about what "clearly established law" the state court might have applied, as well as how it was applied. Under these circumstances,

---

**2.** We note that in *Davis v. Kramer,* the California Court of Appeals supplied a decision, albeit unpublished, explaining why it was denying Davis's appeal. *See* 167 F.3d at 496. Thus, *Davis* presented different factual circumstances than are present here.

meaningful consideration of the state court's reasoning on federal habeas review is not possible. Thus, the district court properly deduced that it was left with no alternative but to review independently the claims in the petition.

IV

A

After conducting an independent analysis, the district court correctly concluded that Delgado had been denied his Sixth Amendment right to effective assistance of appellate counsel under *Strickland v. Washington*, which is "clearly established law" for the purposes of AEDPA. *See Jones*, 114 F.3d at 1013. The district court properly determined that Delgado's appellate counsel was ineffective because he failed to raise any arguable issues in the appellate brief in violation of the procedure announced in *Anders v. California*.

Under clearly established law, all criminal defendants have a right to an advocate in mandatory appeals. *See Douglas v. California*, 372 U.S. 353, 355–58, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Appellate counsel has an ethical responsibility of constitutional dimension to argue zealously those issues that counsel finds not wholly frivolous. *See Anders*, 386 U.S. at 744, 87 S.Ct. 1396. When an attorney believes an appeal would violate his or her ethical duty to refrain from making frivolous arguments, *Anders* requires counsel to "advise the court and request permission to withdraw." *Id.* A request to withdraw, "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Id.* The attorney must send the brief to the defendant and the defendant must be informed of his or her right to file a supplemental brief. *See id.*

The reviewing court then must make a full examination of all of the proceedings to determine if the appeal is in fact wholly frivolous. *See id.* If the court finds the appeal to be frivolous, the court may permit counsel to withdraw. *See id.* If the court finds any arguable issues, it must appoint counsel for the defendant. *See id.* The rea-

son for this exacting procedure is to ensure that indigent defendants receive the same legal assistance that nonindigent defendants receive. *See id.* at 745. In addition, the brief containing "ready references" to arguable issues assists the court in its vigorous review, rather than presenting the court with a cold record. *See id.*

These mandates were violated in this case. The appellate brief filed on Delgado's behalf "failed to draw attention to 'anything in the record that might arguably support the appeal' "—a failure that left Delgado constructively without counsel on appeal. *Penson v. Ohio*, 488 U.S. 75, 81, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (quoting *Anders*, 386 U.S. at 744, 87 S.Ct. 1396). In addition, counsel did not file a motion to withdraw as required by *Anders*. *See* 386 U.S. at 744, 87 S.Ct. 1396. Thus, Delgado's appellate counsel rendered constitutionally deficient representation within the meaning of *Strickland*. *See Davis*, 167 F.3d at 496–98 (applying AEDPA to an identical challenge under *Strickland* and *Anders* and determining that the Supreme Court in *Anders* clearly established that appellate counsel must raise arguable issues in an *Anders* brief).

Contrary to the Deputy Warden's contention, AEDPA does not preclude the district court's application of *Anders* to invalidate California's no-merit brief procedure approved in *People v. Wende*, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979). In *Davis*, we examined the interplay between *Anders* and the California no-merit brief procedure approved in *Wende*, and concluded that the *Wende* procedure did not comport with the constitutional requirements of *Anders*. *See* 167 F.3d at 498–99; *see also Robbins v. Smith*, 152 F.3d 1062, 1068 (9th Cir. 1997) (holding that, for retroactivity purposes in a case in which appellate counsel had filed a *Wende* brief, "[a]pplication of *Anders* ... required no extension of precedent or logical interpolation. The facts of Robbins's case almost directly mirror those of *Anders*. Accordingly, no 'new' constitutional rule was invoked in this case"), *petition for cert. filed*, 67 U.S.L.W. 3437 (U.S. Dec. 17, 1998) (No. 98–1037). Likewise, in this case we have

applied existing Supreme Court precedent to reach our decision, a methodology consistent with AEDPA.

Further, AEDPA does not "compel" federal courts to turn an amaurotic eye to state court proceedings, nor to rubberstamp state court interpretation of federal law. Indeed, true cooperative federalism, as well as AEDPA, demands a more nuanced approach. In this case, the results hardly could be more plain. *Anders* has been clearly established law of the United States Supreme Court for more than thirty years. As Chief Judge Hug determined, *Wende* procedures do not comport with the "very low threshold" established by the Supreme Court in *Anders. See Robbins,* 152 F.3d at 1067–68. And as the *Davis* court held, nothing in AEDPA alters that assessment. *See* 167 F.3d at 498.

On the face of this record, Delgado's appellate counsel failed to satisfy *Anders* by first refusing to identify any appellate issues, despite the prior listing of potential issues by trial counsel, and by then neglecting to seek to withdraw as counsel. These errors rendered appellate counsel's performance constitutionally deficient under the Sixth Amendment. *See Strickland,* 466 U.S. at 687–91, 104 S.Ct. 2052; *Davis,* 167 F.3d at 498.

**B**

The district court properly held that under *Strickland,* Delgado did not need to show prejudice because the failure of his counsel to raise arguable issues in the appellate brief creates a presumption of prejudice. *See Penson,* 488 U.S. at 86, 109 S.Ct. 346; *Davis,* 167 F.3d at 499–500. As the Supreme Court explained in *Penson,* when appellate counsel's only action is to file a motion to withdraw that raises no arguably appealable issues, a petitioner is "completely without representation during the appellate court's actual decisional process." 488 U.S. at 88, 109 S.Ct. 346. Merely filing a no-merit brief similarly leaves a petitioner without representation on appeal. This situation differs radically from the case "in which counsel fails to press a particular argument." *Id.* Thus, when counsel fails to raise any arguable issues in the appellate brief, it is "inappropriate to apply either the prejudice requirement

of *Strickland* or the harmless error analysis of *Chapman*[ *v. State of Cal.,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)]." *Id.* at 88–89, 109 S.Ct. 346; *see also Lofton v. Whitley,* 905 F.2d 885, 887–88 (5th Cir.1990) (presuming prejudice when counsel failed both to raise arguable issues in the appellate brief and ask for leave to withdraw).

The wisdom of this rule is amply demonstrated in this case. Throughout his journey in the criminal justice system, Delgado had hardly any assistance, much less effective assistance, of appointed counsel. His appointed trial counsel, who purportedly met with Delgado on only three occasions, was absent from almost all of the court proceedings. Instead, Delgado received his advice and representation from attorneys for his codefendants who, although no doubt well-meaning, had other priorities and inherent conflicts of interest in this multi-defendant drug conspiracy case-a case in which even the judge noted the "finger-pointing" among codefendants. No one submitted any evidence or even argument for mitigation of his sentence, although factors that might have supported a reduction existed.

Although trial counsel's ineffective assistance presented a legitimate, specific, and compelling appellate issue, it was never developed or presented by counsel. Even after specific appellate issues were identified in the certificate for probable cause, Delgado's appointed appellate counsel ignored them, simply choosing to inform the court that there were no arguable issues. When appellate counsel deliberately elected to ignore the requirements of *Anders,* he completely deprived Delgado of the right to counsel on appeal. Thus, the district court appropriately held that Delgado's Sixth Amendment rights had been violated.

**C**

The absence of any meaningful legal assistance in this case makes a mockery of the representation of indigent defendants contemplated by the Supreme Court in *Anders, Penson, Strickland,* and *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Clearly established constitution-

al law requires competent advocacy in criminal defense, not shadowboxing. To hold otherwise would, to paraphrase Eliot, render the clear sound of *Gideon*'s trumpet quiet and meaningless as wind in dry grass.

We affirm the judgment of the district court.

AFFIRMED.